IN THE UNITED S TATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | | |
|---|---|---|
| PINOVA, INC., | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | 2:13-cv-144 (JEG/LGW) |
| | * | |
| QUALITY MILL SERVICE, INC., and | * | |
| QUALITY INDUSTRIES OF | * | |
| AMERICA, INC., | * | |
| | * | |
| Defendants | * | |
| _____ | * | |
| | * | |
| QUALITY MILL SERVICE, INC., and | * | |
| QUALITY INDUSTRIES OF | * | |
| AMERICA, INC., | * | |
| | * | |
| Third-Party Plaintiffs, | * | |
| | * | |
| v. | * | |
| | * | |
| WEBSTER INDUSTRIES, INC., | * | |
| | * | |
| Third-Party Defendant. | * | |

## THIRD-PARTY DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

COMES NOW, Webster Industries, Inc. ("Webster") Third-Party Defendant in the above matter, and hereby submits its Reply Brief in Support of its Motion for Summary Judgment, and shows that all of Third-Party Plaintiffs' claims against Webster should be dismissed for the following reasons, as well as those stated in Webster's initial brief:

1

## Introduction

After being sued by Plaintiff Pinova, Quality Mill Service and Quality Industries of America  filed a Third-Party Complaint against Webster, asserting implied-warranty claims. (Doc. 8). This case is ripe for summary judgment from a factual and legal standpoint.

 From a factual standpoint, Quality Mill Service, Inc., and Quality Industries of America, Inc., do not dispute any of Webster's material facts. (Doc. 36-3).

From a legal standpoint, and as detailed below, summary judgment should be entered on Quality Industries of America's claims because it admits that its claims fail for lack of privity, a necessary element of an implied-warranty claim.

Quality Mill Service's claims fail as a matter of law for at least two different reasons. First,  Quality Mill Service is seeking consequential damages from Webster; however, Quality Mill Service has admitted "that Webster effectively excluded claims for incidental and consequential damages." (Doc. 36-3, ¶ 3). Quality Mill Service's claims as a matter of law for a second reason: all implied warranties of merchantability and implied warranties of fitness for a particular purpose have been conspicuously disclaimed in writing. To be sure, Quality Mill Service — in its response Brief – made the following admission regarding the effectiveness of Webster's disclaimer: "Webster establishes that the warranty disclaimers contained on the 'Terms and Conditions of Sale' document linked to its website are themselves 'conspicuous' under O.C.G.A. § 11-2-316(2). Quality Mill does not dispute the conspicuousness of those disclaimers." (*See* Quality Mill Service's Resp. Brief at 4). That

admission warrants summary judgment in Webster's favor. In sum, summary judgment should be entered in favor of Webster.

**Argument and Citations to Authorities**

 A.   **Quality Industries of America, Inc., admits that all of its claims fail.**

After being sued by Plaintiff Pinova, Quality Mill Service, Inc. and Quality Industries of America, Inc. filed a Third-Party Complaint, asserting implied warranty claims against Webster. (Doc. 8). Webster argued that Quality Industries of America's claims fail for lack of privity (Webster's Brief at p. 18-19) and Quality Industries of America concedes that its claims fail for lack of privity. (Quality Mill Service's Resp. Brief at 2, fn. 1). Thus, Quality Industries of America's claims should be dismissed.

 B.   **Webster is entitled to all summary judgment on all of Quality Mill Service's claims because it admits that its claims damage are barred.**

Plaintiff Pinova's Complaint seeks damages for "incidental damages, consequential damages, and lost profits." (Doc. ¶¶ 1, 28,34, 43 and Prayer for Relief, (a)). More specifically,  Pinova seeks damages for "at least fourteen (14) days of down production time and over $81,000 in repair costs for unexpected failures." *Id.* at 28, 34 & 43; *see also id.* at 21 (claiming damages for "lost production and repair costs...")

The "expense of making repairs is recoverable as consequential damages" under the Uniform Commercial Code. *S. Concrete Products Co. v. Martin*, 126 Ga. App. 534, 536 (1972)(collecting cases "holding that the cost of repairs and expenses for repairing defects

and goods supplied by a seller is a proper measure of damages.")[1] Similarly, lost profits are a form of "consequential damages" under the UCC. GEORGIA JURISPRUDENCE, UNIFORM COMMERCIAL CODE, ART 2 — SALES, § 2:180 (citing *Multivision Nw., Inc. v. Jerrold Electronics Corp.*, 356 F. Supp. 207, 217, fn. 4 (N.D. Ga. 1972)[2]

Thus, what Pinova is seeking from Quality Mill Service is properly classified as "consequential damages." And Quality Mills seeks these exact same damages under the implied-warranty claims that it is has asserted against Webster. (Doc. 8, ¶¶ 12-13, 16-17). Quality Mill Service, however, has admitted "that Webster effectively excluded claims for incidental and consequential damages." (Doc. 36-3, ¶ 3). Because Quality Mill Service's implied-warranty claims against Webster are seeking damages which have admittedly been disclaimed, Webster is entitled to summary judgment on all of Quality Mill Service's claims. *See McCrimmon v. Tandy Corp.*, 202 Ga. App. 233, 235 (1991)(affirming summary judgment for seller on buyer's claim for consequential damages because such damages had been disclaimed under Georgia's UCC.); *see also* Fed.R.Civ.P. 56(c)(summary judgment appropriate where the "the pleadings,...and admissions on file, together with the affidavits,

---

[1] *See also Poultry Health Serv. of Georgia, Inc. v. Moxley*, 538 F. Supp. 276, 279 (S.D. Ga. 1982)("Labor and repair expenses are properly recoverable as incidental and consequential damages.")(citations omitted); *Hawthorne Indus., Inc. v. Balfour Maclaine Int'l, Ltd.*, 676 F.2d 1385, 1387 (11th Cir. 1982)("Increased production costs are unquestionably proper items of recovery as consequential damages when adequately attributed to a breach.")(citing Georgia cases)

[2] *See also* 1 James J. White & Robert S. Summers, UNIFORM COMMERCIAL CODE § 10–4, at 518 (3d ed. 1988) ("The most commonly litigated and doubtless the most often sought after item of consequential damages is lost profits.").

if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to judgment as a matter of law.")[3]

**C.    Webster is entitled to all summary judgment on all of Quality Mill Service's claims for another reason: all implied warranties of merchantability and implied warranties of fitness for a particular purpose have been excluded.**

Even if Quality Mill Service was pursuing some type of damage that was not barred, which is false, Quality Mills Service's claims fail for another reason: all implied warranties of merchantability and implied warranties of fitness for a particular purpose have been excluded.

Webster moved for summary judgment, arguing that any implied warranties of merchantability and implied warranties of fitness for a particular purpose have been excluded. (*See* Webster's Brief, *passim*). Under Georgia law, a seller may, via a written agreement, disclaim any implied warranties for fitness for a particular purpose and merchantability, so long as the disclaimer is conspicuous. (*See* Webster's Brief at 5-8 discussing O.C.G.A. §§ 11–2–314(1), 11–2–315, 11–2–316). To be sure, Quality Mill Service

---

[3]Quality Mill Service may claim that it is entitled to damages for the cost of the allegedly defective chain. This argument would fail for several different reasons. First, no such claim was asserted in Quality Mill Services' Complaint or Pinova's for that matter, (*see* Doc.1, ¶¶ 34, 43; Doc. 8, ¶¶ 12-13, 16-17), and the time for doing so has passed. *Blanton v. Jones*, CV 210-188, 2012 WL 844771 (S.D. Ga. Mar. 12, 2012)(party "may not amend his Complaint through argument in a brief opposing summary judgment."). Second, under Webster's Terms and Conditions, Webster's "liability is limited to the cost of repair or replacement of the merchandise." (Doc. 31-2, ¶ 16). Quality Mill Service paid $12,597 for the chain at issue (Ex. 6 to RFA) and Quality Mill Service has been given, and accepted, credit in the amount of $13,258.20 from Webster. (Resp. to RFA,¶¶ 32-33). Quality Mill Service has no evidence otherwise to create an issue of fact.

concedes that a "seller may exclude these warranties by disclaiming them in writing but only if the written disclaimer is 'conspicuous' to the buyer at the time of contract formation." (*See* Quality Mill Service's Resp. Brief at 2). Quality Mill Service — in its response Brief – made the following admission regarding the effectiveness of Webster's disclaimer: "Webster establishes that the warranty disclaimers contained on the 'Terms and Conditions of Sale' document linked to its website are themselves 'conspicuous' under O.C.G.A. § 11-2-316(2). Quality Mill does not dispute the conspicuousness of those disclaimers." (Quality Mill Service's Resp. Brief at 4). That admission warrants summary judgment in Webster's favor. *See* Fed.R.Civ.P. 56(c)

As a last resort, Webster Mills argues that a clause incorporating the warranty disclaimers must independently meet the "conspicuous" requirement of O.C.G.A. § 11-2-316.(*See* Quality Mill Service's Resp. Brief, *passim*). Analytically, this argument ignores the Georgia case law that treats incorporated documents as a single instrument[4] and Quality Mills admits that the warranty disclaimers themselves are conspicuous. (Quality Mill Service's Resp. Brief at 2). To be sure, at least two Georgia Courts have upheld disclaimers of implied warranties which were incorporated by reference. *McCrimmon v. Tandy Corp.*, 202 Ga. App. 233 (1991) and *A–Larms, Inc, v. Alarms Device Mfg. Co.*, 165 Ga.App. 382, 386 (1983)

In *McCrimmon v. Tandy Corp.*, for example, the plaintiff purchased a computer and

---

[4]See Webster's Brief at 8-12 (briefing the incorporation-by-reference doctrine, as well as the recent trend in cases applying that doctrine to terms contained on the Internet.

6

was provided a sales receipt at the time of the sale. 202 Ga. App. 233 (1991). The face of the sales receipt contained a handwritten notation, "30 day return, 90 day warranty." On the reverse side was a printed statement captioned, "LIMITED WARRANTY AND SOFTWARE LICENSE," which acknowledged that the seller "provides a Limited Warranty included with the packaging and manuals pertaining to all of its computer Equipment and Software programs purchased," and which "incorporated by reference" that limited warranty. It further informed the purchaser that the limited warranty was "available for inspection by the  customer at the seller's place of business prior to purchase upon request."

Before going further into the *McCrimmon* opinion, a point of clarification on Georgia warranty law might be helpful. That is, a *limited* warranty refers to a warranty – usually written – that is issued by the seller to the buyer and is, therefore, a creature of a private contract between the parties. *Hines v. Mercedes-Benz USA, LLC*, 358 F. Supp. 2d 1222, 1230 (N.D. Ga. 2005) ("the language of the vehicle's limited warranty controls the inquiry." citing *Cipollone v. Liggett Group*, Inc., 505 U.S. 504, 525 (1992)). *Cipollone* held: "A manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty. Accordingly, the 'requirements' imposed by an express warranty claim are not 'imposed under state law,' but rather imposed by the warrantor." *Id*. at 525.  By contrast, as Quality Mill Service points put, an *implied* warranty arises by operation of law. (*See* Quality Mill Service's Resp. Brief at 3). Webster now turns back to *McCrimmon.*

In *McCrimmon*, the buyer subsequently sued the seller alleging claims for breach of implied warranties of merchantability and fitness for a particular purposes, breach of express warranty, breach of contract, and fraud. The trial court granted summary judgment to the seller with respect to the claims of fraud and breach of implied warranties. While the buyer's claims for breach of contract and breach of express warranty remained pending in the trial court, the buyer appealed the grant of summary judgment to the Court of Appeals.

The seller argued that it has disclaimed all implied warranties via the text contained "in the owner's and software manuals supplied to [the buyer] with the equipment." Upholding the disclaimer of implied warranties, the Court of Appeal reproduced the conspicuous disclaimer contained "in the owner's and software manuals." The buyer argued that he saw the sales receipt for the first time after he had taken delivery of the equipment and he further stated that had he been made aware of the language of the sales receipt and limited warranty that was contained in the owner's manual, he would not have purchased the computer equipment. The buyer's failure to read the documents that disclaimed the implied warranties, which were "incorporated by reference" via the sales receipt, was no excuse held the Georgia Court of Appeals. The Court of Appeals held that it was the buyer's "responsibility to read" the receipt and that a "party may not so benefit from his failure to exercise common prudence and diligence."

As noted above, and contrary to Quality Mills Service's position that the text incorporating by reference a disclaimer of implied warranty must mention the disclaimer

of implied warranty to be effective,[5] there is no reference in the *McCrimmon* opinion of the sales receipt— which, per the Court of Appeals, "incorporated by reference" the implied warranty disclaimed —  mentioning any implied warranty whatsoever. Similarly, in *A-larms, Inc. v. Alarms Device Mfg. Co.,* 165 Ga. App. 382 (1983), which Webster previously briefed, there was no reference in the catalog — which referenced the document that actually disclaimed the implied warranties – that there was any disclaimer of implied warranties.  Thus, Quality Mill Service's arguments run contrary to Georgia law.

D.     **The articles and cases cited by Quality Mill Service are easily distinguishable.**

In support of its arguments, Quality Mill Service cites an Am. Jur. article, an article from Massachusetts Academy of Trial Attorneys, a 1970 decision from Connecticut, and unpublished decisions from Illinois and Ohio. (*See* Quality Mill Service's Resp. Brief at 5-7). The articles and cases cited by Quality Mill Service are easily distinguishable.

The Am. Jur. Article cites two cases:  *Koellmer v. Chrysler Motors Corp.,* 6 Conn. Cir. Ct. 478 (1970)  and *Woodward v. Naylor Motor Sales*, 1974 WL 21755 (Mich. Dist. 4111/74). The article from the Massachusetts Academy of Trial Attorneys cites the same two cases cited by the Am. Jur. Article, as well as *Outboard Marine Corp. v. Babcock Ind., Inc.*, 1994 WL 468596 (Ill. 1994) and an earlier version of the same Am. Jur. article. Thus, all of Quality Mills Service's "authority" rests on the 1970 Connecticut case of *Koellmer*, the 1994 Illinois

---

[5]*See* Quality Mill Service's Resp. Brief at 4 arguing that "Webster's generic reference to additional 'terms and conditions' (without a specific reference to warranty disclaimers) did not operate as a 'conspicuous' disclaimer of the implied warranties of merchantability and of fitness for a particular purpose,..."

unpublished decision in *Outboard Marine Corp.,* and the 1988 Ohio unpublished decision in *Serv. Guide, Inc. v. Bldg. Sys. Div., Armco, Inc.,* 1988 WL 38803 (Ohio 1988). Webster will now brief each one of these cases.

*In Outboard Marine Corp.*, the seller argued that its acceptance form incorporated by reference the terms contained in an earlier quotation because one paragraph in the acceptance form began with the phrase "Unless covered otherwise in the quotation."1994 WL 468596 at * 6.  The court observed that, at first glance, the acceptance form " contains no clear mention of any warranty or, more importantly, the duration of such a warranty." *Id*. The court found that the "general reference" in the acceptance form was "too tenuous a link..."  1994 WL 468596  at *7. By contrast, Webster's Order Confirmation does not contain any "tenuous" language like "Unless covered otherwise," as was the case in *Outboard Marine Corp*. Instead, Webster's Order Confirmation squarely incorporates Webster's Terms and Conditions in all capital letters:

> "WEBSTER INDUSTRIES, INC. TERMS AND CONDITIONS APPLY ON ALL WEBSITE QUOTATIONS AND ORDERS TO PURCHASE WEBSTER PRODUCTS. COPIES OF THE WEBSTER TERMS AND CONDITIONS OF SALES ARE AVAILABLE UPON REQUEST OR ON OUR WEBSITE AT WWW.WEBSTERCHAIN.COM"  *(RFA*, Ex. 6; *Resp. to RFA* , ¶26-27)

Quality Mill Service admits Webster's Order Confirmation references Webster's Terms and Conditions. (*Resp. to RFA*, ¶29). Thus, and unlike *Outboard Marine Corp.*, there is no doubt that Webster's Order Confirmation  incorporated the Terms and Conditions.

In *Serv. Guide, Inc.*, the exclusionary language upon which the defendant relied

"was furnished to plaintiff only after purchase and installation of the roofing panels." 1988 WL 38803 at *5. The court expressed "difficulty in applying an exclusionary clause that the seller reveals to the buyer only after the purchase contract has been entered into and executed by performance by the seller." *Id*. There, the court concluded as follows in its 1988 opinion:

> A reference to another paper, which may contain the conspicuous language, is insufficient to meet the conspicuous requirement unless such other paper is actually made physically a part of the contract at the time it is entered into. In other words, the conspicuous requirement is to call attention to the buyer of the existence of the warranty exclusion, which is not accomplished by incorporation by reference of a document which contains the warranty exclusion but is not given to the buyer nor physically included in the contract at the time the contract is entered into. 1988 WL 38803 at *5

The Court in *Serv. Guide, Inc.*, was obviously concerned about a seller attempting to disclaim liability by relying upon a document that was not made available to the buyer at the time of contracting. That concern is exactly what Official Comment 1 to O.C.G.A. § 11-2-316 "seeks to protect[:] a buyer from unexpected and unbargained language of disclaimer" and *"surprise."* O.C.G.A. § 11-2-316, cmt. 1. Under the rationale of *Serv. Guide, Inc.*, it stands to reason that the exclusion would have been enforced had it been "physically" made a part of the contract or "physically" given to the buyer at the time it is entered into, thus negating the element of surprise.

The opinion in *Serv. Guide, Inc.,* was issued in 1988. Even in 1995, seven years after *Serv. Guide, Inc.* was issued, "less than 1% of world population had access to Internet..."

*Kulbicki v. State*, – Ky. — 2014 WL 4215883, fn. 12 (Md. Aug. 27, 2014). According to the source cited by *Kulbicki*, 1993 is the first year reported for internet users. Thus, the idea that documents could be accessed or shared via the internet was not even a remote possibility a the time *Serv. Guide, Inc.* was issued. Thus, *Serv. Guide, Inc.,* does not reflect the modern trend in business. However, as recognized by one court in 2012, "[w]ith the widespread accessibility of the Internet, companies are turning to posting their general terms and conditions online and incorporating them into a physical document by reference to the Internet site where they are located.." *Dakota Foundry, Inc. v. Tromley Indus. Holdings, Inc.*, 1:11-CV-01026, 2012 WL 32440 (D.S.D. Jan. 5, 2012). Courts have held that a "customer on notice of contract terms available on the internet is bound by those terms." *Burcham v. Expedia, Inc.*, 4:07CV1963 CDP, 2009 WL 586513, * 2 (E.D. Mo. Mar. 6, 2009). Thus, "courts, applying traditional contract principles" have held that  "internet provisions clearly incorporated by reference into a purchase order, readily available on the identified internet site, and plainly and clearly set forth therein,' are binding even where the party has not read them." *One Beacon Ins. Co. v. Crowley Marine Services, Inc.*, 648 F.3d 258, 268 (5th Cir. 2011). In fact, as previously briefed, at least one Georgia District Court had applied the incorporation-by-reference doctrine to terms that appeared on a company's website. *See* Webster's Brief at 12-14 (discussing  *Printed Specialties, Inc. v. Multifeeder Technology, Inc.*, 3:09-cv-00042-JTC, (N.D. Ga. Mar. 10, 2010). In sum, the concern in *Serv. Guide, Inc.* — springing a disclaimer upon the buyer after the fact — is simply not present in this case. Instead, Qaulity Mill Service has admitted that Webster's Terms and Conditions were

12

available on request, or on Webster's website, www.websterchain.com; that it could have reviewed Webster's Terms and Conditions; and that Webster – in no way – prevented Quality Mill Service from reviewing Webster's Terms and Conditions. (*See* Webster's Brief at 2-4).

Finally, in *Koellmer*, the plaintiff entered into an agreement in 1967 with a dealership to purchase a new Dodge truck and also executed an order form. 6 Conn. Cir. Ct. at 479. After experiencing problems with the truck, the plaintiff sued the dealer and the manufacture, claiming a breach of an implied warranty of merchantability. *Id*.

The issue was whether the terms contained in the order form properly disclaimed the implied warranty of merchantability. *Koellmer*, 6 Conn. Cir. Ct. at 483. At the bottom of the form directly over the plaintiff's signature appeared the following in "small print: 'I have read the matter printed on the back hereof and agree to it as a part of this order the same as if it were printed above my signature.'" *Id*. at 481. "On the back of the form, under the title 'Conditions,' there appear[ed] ten paragraphs, each separately numbered. The seventh paragraph, in brief, disclaims an implied warranty of merchantability."*Id*

Noting that "'[l]anguage in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color,'" the court examined "the disclaimer clause appearing on the back of the order form in paragraph (7)":

> The ten conditions are each printed in the same lettering or print and in the same color   and total over 800 words. The disclaimer clause is embedded in the seventh paragraph, and there is nothing characteristic about the clause or the paragraph to distinguish it from the other nine paragraphs.

> The disclaimer in the order form failed to comply with the
> statutory requirements. *Koellmer* , 6 Conn. Cir. Ct. at 483

The dealership further argued that the warranties set forth in the operator's manual, placed

in the glove compartment at the time of delivery, contained a clause disclaiming an implied

warranty of merchantability. *Koellmer*, 6 Conn. Cir. Ct. at 484. The dealership argued that

"paragraph (7) on the back of the order form incorporates by reference the material in the

operator's manual and that material is therefore binding on the plaintiff." *Id*. The court

rejected that argument and offered is reasons, plus two additional reasons:

> We have already determined that the disclaimer clause in
> paragraph (7) failed to comply with the statutory
> requirements. Furthermore, incorporation by reference, only,
> can hardly be regarded as conspicuously setting forth the
> conditions appearing in the other document. Moreover, the
> conditions appearing in the operator's manual, standing alone,
> would not be binding, for a 'mere delivery of a printed and
> unexecuted form after the sale had been consummated would
> not bind the purchaser. It is further asserted that the 'five years
> or 50,000 miles' guarantee appearing on the face of the order
> form is controlling. Such an express warranty would not
> negate an implied warranty, since it is not inconsistent with an
> implied warranty. *Koellmer*, 6 Conn. Cir. Ct. at 484

Unlike *Koellmer*, where the exclusion was not conspicuous, Quality Mill Service

admits that the disclaimer is conspicuous. *See* Quality Mill Service's Resp. Brief at 4.

Quality Mill Services cites *Koeller* for this proposition: "Incorporation by reference, only,

can hardly be regarded as conspicuously setting forth the conditions appearing in the other

document." *See* Quality Mill Service's Resp. Brief at 6. In reality, *Koeller* had "already held

determined that the disclaimer clause" was not conspicuous and the Court went on to

14

write: "*Furthermore,* incorporation by reference, only, can hardly be regarded as conspicuously setting forth the conditions appearing in the other document." *Koellmer*, 6 Conn. Cir. Ct. at 484 (Italics supplied). This explanation is clearly dicta, as signaled by its introductory use of the word "Furthermore," which is omitted by Quality Mill Service in its brief.[6]

Finally, Quality Mill Services argues that the Disclaimer contained in Webster's Terms and Conditions (which are admittedly conspicuous) should not bar Quality Mill Service's claims because the link to the Terms and Conditions is "tucked away at the bottom of the homepage of Webster's website" and that it is "only after a buyer locates that link and clicks on it that he or she will be directed to the 'conspicuous' warranty disclaimers contained in Webster's 'Terms of Conditions of Sale' document." (Quality Mill Service's Resp. Brief at 7-8). Quality Mill Service offers no legal authority for this argument, and this argument ignores the fact that Quality Mill Service has admitted that Webster's Terms and Conditions were available on request or on Webster's website, www.websterchain.com; that it could have reviewed Webster's Terms and Conditions; and that Webster – in no way – prevented Quality Mill Service from reviewing Webster's Terms and Conditions. (*See* Webster's Brief at 2-4).

Moreover, this type of argument is similar to an argument where a party claims that he should not be bound by contractual terms because he never read those terms. Georgia

---

[6]Moreover, the purchase in *Koellmer* was made in 1967, well before the internet was ever dreamed of.

courts have squarely rejected these types of arguments: Under Georgia law, failure to read a contract is no defense, "and it was [Quality Mills'] duty to ensure [it] understood its contents before signing it." *Megel v. Donaldson*, 288 Ga. App. 510, 514-515 (2007)."A party may not so benefit from its failure to exercise common prudence and diligence." *A-larms, Inc. v. Alarms Device Mfg. Co.,* 165 Ga. App. at 386 (1983) "A customer on notice of contract terms available on the internet is bound by those terms." *Burcham v. Expedia, Inc.*, 4:07CV1963 CDP, 2009 WL 586513, * 2 (E.D. Mo. Mar. 6, 2009) " Thus, "internet provisions clearly incorporated by reference into a purchase order, readily available on the identified internet site, and plainly and clearly set forth therein,' are binding even where the party has not read them." *One Beacon Ins. Co. v. Crowley Marine Services, Inc.*, 648 F.3d 258, 268 (5th Cir. 2011)(emphasis added).

### Conclusion

In conclusion, summary judgment should be entered on Quality Industries of America's claim because it admits that its claims fail for lack of privity, a necessary element of an implied warranty claim.

Regarding Quality Mill Service's claims, Webster is entitled to all summary judgment because Quality Mill Service admits that its claims for damage are barred. Further, even if Quality Mill Service was pursuing some type of damage that was not barred, which is false, Quality Mills Service's claims fail for another reason: all implied warranties of merchantability and implied warranties of fitness for a particular purpose have been excluded.

This the 20th day of October, 2014.

                              BROWN, READDICK, BUMGARTNER,
                              CARTER, STRICKLAND & WATKINS, LLP

                              s/ Richard A. Brown_____
                              Richard A. Brown
                              Georgia Bar No. 089200
                              rbrown@brbcsw.com

                              s/ Paul M. Scott_____
                              Paul M. Scott
                              Georgia Bar No. 140960
                              pscott@brbcsw.com

                              Attorneys for Third-Party Defendant


                              BROWN, READDICK, BUMGARTNER,
                              CARTER, STRICKLAND & WATKINS, LLP
                              5 Glynn Avenue
                              P.O. Box 220
                              Brunswick, GA 31521
                              (912) 264-8544
                              (912) 264-9667 (fax)

CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing on:

**Counsel for the Plaintiff**
Mark D. Johnson
Samantha DiPolito
Gilbert, Harrell, Sumerford & Martin, P.C.
777 Gloucester Street, Suite 200
P. O. Box 190
Brunswick, GA   31520

**Counsel for Defendants and Third-Party Plaintiffs**
(Quality Mill Service, Inc. and Quality Industries of America, Inc.)
Robert R. Gunn, II
Stuart E. Walker
Thomas Peter Allen, III
John T. McGoldrick, Jr.
Martin Snow, LLP
P. O. Box 1606
Macon, GA   31202-1606

through the Court's Electronic Case Filing System, or by depositing it in the United States

mail with sufficient postage affixed to assure delivery.

        This 20th day of October, 2014.

                        s/ Paul M. Scott_____
                        Paul M. Scott
                        Georgia Bar No. 140960
                        pscott@brbcsw.com
                        Attorney for Third-Party Defendant
                        BROWN, READDICK, BUMGARTNER,
                        CARTER, STRICKLAND & WATKINS, LLP
                        5 Glynn Avenue
                        P.O. Box 220
                        Brunswick, GA 31521
                        (912) 264-8544
                        (912) 264-9667 (fax)

18