# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

PINOVA, INC.,

    Plaintiff,

vs.

QUALITY MILL SERVICE, INC., and
QUALITY INDUSTRIES OF AMERICA,
INC.,

    Defendants.

CV 213-144

QUALITY MILL SERVICE, INC., and
QUALITY INDUSTRIES OF AMERICA,
INC.,

    Third-Party Plaintiffs,

vs.

WEBSTER INDUSTRIES, INC.,

    Third-Party Defendant.

## ORDER

Presently before the Court is Third-Party Defendant Webster's Motion for Summary Judgment (Dkt. no. 38) as to Third-Party Plaintiffs Quality Mill Service, Inc. and Quality Industries of America, Inc.'s Third-Party Complaint (Dkt. no. 8). Because the Third-Party Plaintiffs' request for

consequential and incidental damages against Webster is barred and they have not shown that they seek other damages, Third-Party Defendant's Motion for Summary Judgment is **GRANTED**.

**FACTUAL BACKGROUND**

The facts of this case are not in dispute. See Dkt. no. 31-2, pp. 4-16, (Webster's Undisputed Material Facts); Dkt. no. 36-3, p. 2, (Quality Mill's Undisputed Material Facts, explicitly adopting Webster's statement of the facts).[1]

Plaintiff Pinova, Inc. ("Pinova") manufactures resin-based products at a manufacturing plant in Brunswick, Georgia. Dkt. no. 1, ¶ 1. Pinova purchased 38 ten-foot sections of Webster WH132 chains from Defendant Quality Mill Service, Inc. ("Quality Mill") for $15,352.00, to be used in its operations. Id. ¶¶ 10, 13. Pinova alleges that a "series of failures occurred while the subject chains were being used on the conveyor systems. The failure occurred because of the defective nature of the sidebars, pins, links and welds of the chains." Id. ¶ 15. These failures significantly disrupted Pinova's production, and Pinova brought suit against Defendants Quality Mill and Quality Industries of America, Inc. ("Quality Industries"),[2] for breach of express warranty, breach of implied warranty of

---

[1] To aid in explaining the background of this case, the Court will rely in part on Plaintiff Pinova's Complaint (Dkt. no. 1). While Pinova is the Plaintiff in the underlying case, it is not a party to this motion.
[2] Neither Pinova's Complaint nor Quality Mill and Quality Industries' Complaint explain the exact relationship between Quality Mill and Quality Industries.

2

merchantability, and breach of implied warranty of fitness for a particular purpose, based on Georgia's adoption of the Uniform Commercial Code. Dkt. no. 1. Pinova seeks to recover for "incidental damages, consequential damages, and lost profits," particularly, "the value of at least fourteen (14) days of down production time and over $81,000 in repair costs for the unexpected failures . . ." Id. at p. 8 (Prayer for Relief, (a)).

Quality Mill had purchased the chains it sold to Pinova from the manufacturer, Third-Party Defendant Webster Industries, Inc. ("Webster"). After being sued by Pinova, Quality Mill and Quality Industries filed a Third-Party Complaint against Webster, alleging breach of implied warranty of merchantability and breach of implied warranty of fitness for a particular purpose. Dkt. no. 8. Particularly, Quality Mill and Quality Industries allege that if they are liable for any loss suffered by Pinova arising from the failure of the chains Quality Mill purchased from Webster and then sold to Pinova, then Webster is liable to Quality Mill and Quality Industries in the same amount. Dkt. no. 8, ¶¶ 13, 17; p. 6 (Prayer for Relief, (b)).

When it purchased the chains from Webster in 2011, Quality Mill received an order confirmation, which states the following on its first page, in all capital letters:

> WEBSTER INDUSTRIES, INC. TERMS AND CONDITIONS APPLY ON
> ALL WEBSITE QUOTATIONS AND ORDERS TO PURCHASE WEBSTER
> PRODUCTS. COPIES OF THE WEBSTER TERMS AND CONDITIONS

OF SALES ARE AVAILABLE UPON REQUEST OR ON OUR WEBSITE AT WWW.WEBSTERCHAIN.COM.

Dkt. no. 32-2, p. 9 (First Req. for Admis.). Section 4 of the "terms and conditions" available on Webster's website provide, in pertinent part:

> Our merchandise is fully guaranteed against failure due to defective material or workmanship for period [sic] of one year from date of shipment. Merchandise proven defective will be replaced or repaired, no charge, F.O.B. original shipping plant, with freight prepaid and allowed. No charges for field corrections shall be allowed nor any merchandise returned for credit unless authorized in writing by the Webster Corporate Office. In no event, whether as a result of breach of contract or warranty, tort, or otherwise, shall we be liable for incidental or consequential damages including, but not limited to, loss of profits or revenue, loss of use of the equipment or any associated equipment, cost of capital, cost of substitute equipment, facilities or services, downtime costs, or claims of customer of the buyer for such damages. Our liability is limited to the cost of repair or replacement of the merchandise. Any action for the breach of Section 4 must be commenced within one (1) year after the cause of action has occurred. **SELLER MAKES NO OTHER WARRANTY OR GUARANTEE OF ANY KIND WHATEVER, EXPRESS OR IMPLIED. ALL IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNTESS FOR A PARTICULAR PURPOSE ARE HEREBY DISCLAIMED BY THE SELLER AND EXCLUDED FROM THIS AGREEMENT.**

Dkt. no. 32-3, p. 4 (Ex. Attached to Bogner Dep.) (bold in original).

## LEGAL STANDARD

When considering a motion for summary judgment the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The facts of this case are not in dispute. See Dkt. no. 31-2, pp. 4-16, (Webster's Undisputed Material Facts); Dkt. no. 36-3, p. 2, (Quality Mill's Undisputed Material Facts, explicitly adopting Webster's statement of the facts). All the Court needs to consider, then, is whether Webster is entitled to judgment as a matter of law based on the agreed-upon facts.

**DISCUSSION**

Webster makes three arguments for why Quality Mill and Quality Industries' claims against it must fail. First, Webster argues that Quality Industries was never in privity of contract with Webster, and thus cannot recover against Webster on a breach of warranty claim. Second, Webster argues that all of the damages Quality Mill seeks against Webster are effectively consequential or incidental damages, which Webster clearly excluded under its terms and conditions. Finally, Webster argues that, to the extent the damages Quality Mill seeks are not barred, the Order Confirmation incorporated by reference Webster's Terms and Conditions effectively excluded all implied warranties of merchantability and implied warranties of fitness for a particular purpose.

The third issue is plainly the most intriguing. The Georgia Uniform Commercial Code allows for the exclusion or modification of implied warranties of merchantability and implied warranties

AO 72A
(Rev. 8/82)

of fitness for a particular purpose.[3] See Ga. Code Ann. § 11-2-314(1) ("unless excluded or modified (Code Section 11-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale . . ."); § 11-2-315 (when a seller knows of the use the buyer intends to put the goods towards, "there is unless excluded or modified under Code Section 11-2-316 an implied warranty that the goods shall be fit for such purpose."). However, Code section 11-2-316 requires that such exclusions or modifications "must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify an implied warranty of fitness the exclusion must be by a writing and conspicuous. . . ." Ga. Code Ann. § 11-2-316(2). The question in this case, then, is whether the Order Confirmation's attempted incorporation by reference of the Terms and Conditions on Webster's website effectively and conspicuously incorporates the exclusions of these implied warranties stated in the Terms and Conditions.

The parties have fully briefed this question, but the Court need not answer it. Webster's first two arguments adequately dispose of the damages claims Quality Mill and Quality Industries have brought against Webster.

---

[3] There is no dispute as to the choice of law issue here. Pinova, Quality Mill, and Quality Industries all seek relief under Georgia's Uniform Commercial Code. Dkt. no. 1, Counts II & III; Dkt. no. 8, ¶ 1, pp. 3, 5.

I.  **Quality Industries of America, Inc. Concedes that Its Claims Fail**

Quality Mill, not Quality Industries, purchased the subject chains from Webster. "An implied warranty claim is a contract action and requires privity." Coney v. Mylan Pharm., Inc., 6:11-CV-35, 2011 WL 3607166, *5 (S.D. Ga. Aug. 16, 2011). Implied warranties "arise out of a contract for sale of goods and can only run to a buyer who is in privity of contract with the party against whom the implied warranty is being asserted." McQueen v. Minolta Bus. Solutions, Inc., 620 S.E.2d 391, 392 (Ga. Ct. App. 2005). In its Brief in Opposition to Webster's Motion for Summary Judgment, Quality Industries "concedes that it lacks contractual privity with Webster and thus cannot recover against Webster on a breach-of-warranty claim." Dkt. no. 36, p. 2 n.1. Webster's motion for summary judgment as to Quality Industries' claims is **GRANTED**.

II. **Quality Mill Concedes that Webster Effectively Excluded Consequential Damages Under Its Terms and Conditions**

Webster's second argument is that, regardless of whether or not it conspicuously incorporated its exclusions of the implied warranties of merchantability and fitness, it has effectively disclaimed all claims for incidental damages, consequential damages, and lost profits.

The disclaimer Webster refers to is in Section 4 of the Terms and Conditions referenced on the Order Confirmation and available on Webster's website:

> In no event, whether as a result of breach of contract or warranty, tort, or otherwise, shall we be liable for incidental or consequential damages including, but not limited to, loss of profits or revenue, loss of use of the equipment or any associated equipment, cost of capital, cost of substitute equipment, facilities or services, downtime costs, or claims of customer of the buyer for such damages. Our liability is limited to the cost of repair or replacement of the merchandise.

Dkt. no. 32-3, p. 4. The Georgia UCC provides that remedies generally for breach of warranty can be limited in accordance with Georgia code sections §§ 11-2-718 and 11-2-719. Ga. Code Ann. § 11-2-316(4). However, consequential damages may not be limited or excluded if "the limitation or exclusion is unconscionable." Ga. Code Ann. § 11-2-719(3)

Georgia Courts have interpreted Georgia Code section 11-2-719(3) to allow warrantors to disclaim liability for incidental and consequential damages and to limit the warrantor's obligation to repairing or replacing defective parts. Fiat Auto U.S.A., Inc. v. Hollums, 363 S.E.2d 312, 314 (Ga. Ct. App. 1987). Furthermore, unlike disclaimers of implied warranties of fitness or merchantability, a disclaimer of consequential or incidental damages does not have to be conspicuous to be effective. McCrimmon v. Tandy Corp., 414 S.E.2d 15, 18 (Ga. Ct.

8

App. 1991) ("The argument that [a disclaimer of liability for consequential damages] is unenforceable because [it is] not conspicuous fails. The statute does not require a conspicuous writing, analogous to that of OCGA § 11-2-316(2).").

Along with their concession that Quality Industries cannot bring a breach of warranty claim against Webster, "Quality Mill concedes that Webster's exclusion of consequential damages (which, importantly, is not subject to the conspicuousness requirement imposed by O.C.G.A. § 11-2-316(2)) is not unconscionable under the circumstances of this case . . ." Dkt. no. 36, p. 2 n.1. Quality Mill does not argue that Webster's exclusion of incidental damages is improper.

Because Quality Mill only seeks damages from Webster to the extent that it is liable to Pinova, the Court must now examine Pinova's request for relief to see if it includes damages other than consequential or incidental damages. Pinova's Complaint seeks damages for "incidental damages, consequential damages, and lost profits," particularly damages for "at least fourteen (14) days of down production time and over $81,000 in repair costs for unexpected failures." Dkt. no. 1, p. 8. Repair costs and increased costs of production are recoverable as consequential damages. See Hawthorne Indus., Inc. v. Balfour Maclaine Int'l, Ltd., 676 F.2d 1385, 1387 (11th Cir. 1982); Poultry Health Serv. of Ga., Inc. v. Moxley, 538 F. Supp. 276,

279 (S.D. Ga. 1982). Lost profits are also a form of consequential damages. <u>Multivision Nw., Inc. v. Jerrold Elecs. Corp.</u>, 356 F. Supp. 207 (N.D. Ga. 1972).

Thus, Quality Mill concedes that it cannot seek consequential damages from Webster, and it has not challenged Webster's exclusion of incidental damages. But all of the damages Pinova seeks from Quality Mill are either consequential or incidental, and Quality Mill seeks damages from Webster only to the extent that it is liable to Pinova.[4] Therefore, the Court need not decide whether Webster effectively disclaimed the implied warranties of merchantability and fitness. Even if Webster failed to disclaim those implied warranties, all of the damages Quality Mill seeks from Webster are barred. Webster's motion for summary judgment, then, is **GRANTED** in its entirety.

## CONCLUSION

Because Quality Mill and Quality Industries have effectively conceded their damages against Webster, Webster's motion for summary judgment (Dkt. no. 31) is **GRANTED**. The Clerk of Court is directed to enter the appropriate judgment.

---

[4] While Quality Mill never responded to Webster's arguments that *all* of the damages it seeks from Webster are consequential or incidental (except to concede that it cannot recover consequential damages), Webster nevertheless preemptively argued against any potential claim that Quality Mill may have for the defective chains themselves. See Dkt. no. 38, p. 5 n.3. First and foremost, neither Quality Mill nor Pinova ever asserted a claim for the costs of the chains. See Dkt. no. 1, ¶¶ 34, 43; Dkt. no. 8, ¶¶ 12-13, 16-17. This reason alone is sufficient to find that Quality Mill is not entitled damages for the costs of the chains. Quality Mill has not responded to this argument.

**SO ORDERED**, this 17TH day of March, 2015.

_____
LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA