# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

PINOVA, INC.,

    Plaintiff,

v.

QUALITY MILL SERVICE, INC., and
QUALITY INDUSTRIES OF AMERICA,
INC.,

    Defendants.

CV 213-144

QUALITY MILL SERVICE, INC., and
QUALITY INDUSTRIES OF AMERICA,
INC.,

    Third-Party Plaintiffs,

v.

WEBSTER INDUSTRIES, INC.,

    Third-Party Defendant.

## ORDER

    Plaintiff Pinova, Inc. purchased industrial chains to use in its manufacturing facility from Defendant Quality Mill Service, Inc. Those chains later failed. Pinova now seeks to recover damages relating to the chains' failure from Defendant Quality Mill Service and its parent corporation, Quality Industries of America, Inc. Defendant Quality Industries has filed a motion for summary judgment, arguing that Pinova should

not be allowed to pierce the corporate veil and hold it liable for its subsidiary's transgressions. Dkt. no. 43. Both Defendants have jointly filed a partial motion for summary judgment, arguing that Pinova has failed to produce evidence to support several of its damages claims against the companies. Dkt. no. 64.

Because Pinova only averred direct theories of liability against Quality Industries and its complaint does not support a veil-piercing theory of liability, Defendant Quality Industries' motion for summary judgment (Dkt. no. 43) is **GRANTED**. Because Pinova has produced evidence that would support a finding of consequential damages and attorney's fees but has not produced evidence that would support an award of damages under certain other theories, Defendants' partial motion for summary judgment (Dkt. no. 64) is **GRANTED in part and DENIED in part**.

## FACTUAL BACKGROUND

Plaintiff Pinova, Inc. ("Pinova") manufactures resin-based products by extracting rosin from pine trees and other sources. Dkt. no. 1 ("Compl."), ¶ 7; Dkt. no. 64-13, ¶ 1. To get rosin out of pine tree stumps, Pinova uses two types of conveyor systems called "divinilators." Dkt. no. 64-13, ¶ 3. In March of 2011, Pinova purchased 38 ten-foot sections of Webster WH132 chains from Defendant Quality Mill Service, Inc. ("Quality Mill") for $15,352, to be used on its divinilators. Compl.

¶¶ 10, 13; Dkt. no. 1-2 (Purchase Order). While Pinova purchased the chains from Quality Mill, the chains were originally manufactured by former third-party Defendant Webster Industries, Inc.

The chains consist of two strands, a right-hand chain and a left-hand chain, that are connected by flights. Dkt. no. 64-2 ("Carson Dep."), 23:23-25:20. Pinova purchases the chains in ten-foot sections and then connects them to form a 190-foot loop. Id. The chains are held together by a series of pins, sidebars, and barrels that are welded together. See, e.g., Dkt. no. 76-3, Ex. C ("Grozier Dep.") 15:5-12 (discussing some problems Pinova discovered with these components).

Pinova had bought the same type of chains for the same purpose from Defendants for several years. Id. at 31:6-9. But after it purchased and used these particular chains, Pinova claims it encountered "a series of premature and catastrophic chain failures." Dkt. no. 76, p. 3. Pinova reported these failures to Joe Brice, Quality Mill's outside salesman who worked closely with Pinova. Brice took some pieces of the failed chain to Webster for an analysis. Dkt. no. 76-6, p. 2. Brice told Webster that the chain, which was about six months old, exhibited worn pins, broken sidebars, and sub-par welding. Dkt. no. 76-6, p. 4.

Extracting rosins from wood is one of the first steps in Pinova's production process. Dkt. no. 76-2, Ex. B ("Collier Dep.") 10:12-20. The extracted rosin is then used to create different commercial products. Id. When demand for Pinova's products exceeds its wood-rosin output, it must purchase an alternative rosin source, such as gum-rosin, to make its products and satisfy its orders. See id. at 11:3-10. Pinova claims that when its divinilators were out of commission for about two weeks because of the chain failures, it had to resort to buying gum-rosin to meet its orders. This increased the cost of producing the final products, and Pinova claims that loss as damages. See Dkt. no. 87, p. 23 (schedule of calculated losses).

**PROCEDURAL BACKGROUND**

Pinova filed its complaint against Quality Industries and Quality Mill on October 2, 2013. See Compl. Quality Industries and Quality Mill then filed a third party complaint against Webster, who manufactured the chains, on December 12, 2013. See Dkt. no. 8. Webster moved for summary judgment on Quality Industries and Quality Mill's third party complaint, Dkt. no. 31, and the Court granted that motion on March 17, 2015, Dkt. no. 54. Quality Industries and Quality Mill, then, are the only Defendants left in this case. Against both Defendants, Pinova brings claims of breach of express warranty, breach of warranty of merchantability pursuant to Georgia Code section 11-

2-314, breach of warranty of fitness for a particular purpose pursuant to Georgia Code section 11-2-315, and attorney's fees. Compl. ¶¶ 22-46.

**DISCUSSION**

I.  **Legal Standard**

Summary judgment is required where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Investor Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute over such a fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. In making this determination, the court is to view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To satisfy this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case.

AO 72A
(Rev. 8/82)

Id. at 325. If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257.

## II. Defendant Quality Industries is Entitled to Summary Judgment

### a. Plaintiff Cannot Pierce the Corporate Veil

Quality Industries, independently of Quality Mill, moves for summary judgment on all of Pinova's claims against it because it never made any representations about the chains' quality to Pinova and is not in privity of contract with Pinova. Dkt. no. 43-4. Pinova counters that Quality Industries is simply the alter ego of Quality Mill, who sold the chains and made representations to Pinova, and thus Pinova may pierce the corporate veil and hold Quality Industries liable for Quality Mill's breaches of warranty. Dkt. no. 55. However, Pinova's complaint does not allege facts that could support the application of the veil-piercing doctrine, and it is too late to assert this theory of liability in a response to a motion for summary judgment.

In Georgia, one of the theories that justifies setting aside the corporate form is the "alter ego" doctrine. See Kissun v. Humana, Inc., 479 S.E.2d 751, 752 (Ga. 1997). "Under the alter ego doctrine, equitable principles are used to disregard

the separate and distinct legal existence possessed by a corporation where it is established that the corporation served as a mere alter ego or business conduit of another." Id. For a court to disregard the corporate fiction, "there must be abuse of the corporate form." Derbyshire v. United Builders Supplies, Inc., 392 S.E.2d 37, 40 (Ga. Ct. App. 1990). "For the issue to be submitted to a jury there must be evidence that the corporate arrangement was a sham, used to defeat justice, to perpetrate fraud or to evade statutory, contractual or tort responsibility." Id.

Pinova raises this theory of liability for the first time in its response to Quality Industries' motion for summary judgment. See Dkt. no. 55. "At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a). A plaintiff may not amend her complaint through argument in a brief opposing summary judgment." Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004). Other district courts in this Circuit have held that a veil-piercing theory of liability must be supported by the pleadings. See Klayman v. City Pages, 5:13-CV-143, 2015 WL 1546173, at *9 (M.D. Fla. April 3, 2015); Northstar Marine, Inc. v. Huffman, No. 13-0037-WS-C, 2014 WL 4854843, at *9 (S.D. Ala. Sept. 29, 2014) ("Courts around the country have consistently, emphatically required that

a veil-piercing claim or theory of liability must be presented in the plaintiff's pleading in some form or fashion. . . . Of course, a summary judgment brief is not a proper, permissible vehicle for a *de facto* amendment to the pleadings.").

Georgia courts also expect plaintiffs to plead veil-piercing theories in their complaints. For example, in <u>Steed v. Wellington HealthCare Services, LLC</u>, the Georgia Court of Appeals held that it was not improper for a trial court to grant a defendant's motion for summary judgment while the plaintiff's motion to compel evidence that could establish a veil-piercing theory of liability was pending. 646 S.E.2d 517, 520 (Ga. Ct. App. 2007). The court reasoned that summary judgment was proper because the plaintiff did not allege a veil-piercing theory in her pleadings. <u>Id.</u> "Under these circumstances, we fail to see how evidence that [the allegedly negligent subsidiary] is an alter ego of [the defendant-parent company] would change the outcome of the summary judgment ruling." <u>Id.</u> Furthermore, when the plaintiff tried to argue on appeal that other evidence in the record supported the veil-piercing theory of liability, the court reiterated that the plaintiff "has not asserted a claim for piercing the corporate veil in either of her complaints," and reaffirmed that the trial court properly granted the defendant's motion for summary judgment. <u>Id.</u>

Pinova argues that the allegations in its complaint do, in fact, support a veil-piercing theory. This is not the case. Simply stating that "Defendants" sold Pinova the chains and that "Defendants" knew how Pinova intended to use the chains does not allege that Quality Industries was abusing the corporate form by using Quality Mill as an alter-ego or sham corporation. Pinova's complaint only alleges direct theories of liability against Quality Industries, and, as such, the Court will only entertain those theories. Cf. Mecca Const., Inc. v. Maestro Invs., LLC, 739 S.E.2d 51, 60 (Ga. Ct. App. 2013) (holding that veil-piercing theories of liability need not be alleged in the complaint where theory of liability is direct participation in fraud as opposed to abuse of the corporate form).

### b. Summary Judgment is Proper on Pinova's Direct Theories of Liability Against Quality Industries

Pinova raises four theories of liability against Defendants in its complaint: breach of express warranty, breach of warranty of merchantability, breach of warranty of fitness for a particular purpose, and attorney's fees. Compl. ¶¶ 22-46.

In Georgia, a "statement or representation" to the purchaser about the "character, quality, or title of goods" being sold is a necessary element of a breach of express warranty claim. Atlanta Tallow Co. v. John W. Eshelman & Sons, Inc., 140 S.E.2d 118, 126-27 (Ga. Ct. App. 1964). Where a

AO 72A
(Rev. 8/82)

plaintiff fails to present evidence that the defendant provided an express warranty, summary judgment on an express warranty claim is proper. See Bryant v. Hoffmann-La Roche, Inc., 585 S.E.2d 726, 730-31 (Ga. Ct. App. 2003). Pinova has not produced any evidence suggesting that Quality Industries made any representations or statements about the quality of the chains that Quality Mill sold. Summary judgment on Pinova's breach of express warranty claim against Quality Industries is proper.

The warranty of merchantability and warranty of fitness for a particular purpose encoded in Georgia Code sections 11-2-314 and 11-2-315 are both implied warranties. Ga. Code Ann. § 11-2-314; § 11-2-315. In Georgia, privity between the buyer and seller is an essential element of a breach of warranty claim. See Gowen v. Cady, 376 S.E.2d 390, 393 (Ga. Ct. App. 1988). Implied warranties "can only run to a buyer who is in privity of contract with the party against whom the implied warranty is being asserted." McQueen v. Minolta Bus. Solutions, Inc., 620 S.E.2d 391, 393 (Ga. Ct. App. 2005). Pinova has failed to present any evidence to support a finding of privity of contract between it and Quality Industries. Summary judgement on Pinova's warranty of merchantability and warranty of fitness for a particular purpose claims against Quality Industries, then, is appropriate. See id. at 394.

AO 72A
(Rev. 8/82)

Finally, Pinova's attorney's fees claim against Quality Industries derives completely from the dismissed substantive causes of action. Thus, summary judgment is also appropriate on Pinova's attorney's fees claim against Quality Industries. See J. Andres Lunsford Props., LLC v. Davis, 572 S.E.2d 682, 685 (Ga. Ct. App. 2002).

Defendant Quality Industries motion for summary judgment (Dkt. no. 43) is **GRANTED** in its entirety.

### III. Defendant Quality Mill's Partial Motion for Summary Judgment[1]

#### a. Consequential Damages

As far as damages are concerned, the primary contention in this case is whether Pinova has produced evidence showing that the defect in the chains proximately caused its lost profits and other consequential damages.

Under Georgia's adaptation of the Uniform Commercial Code,

> Consequential damages resulting from the seller's breach include:
>
> (a) Any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and
>
> (b) Injury to person or property proximately resulting from any breach of warranty.

---

[1] Defendants Quality Mill and Quality Industries bring this partial motion for summary judgment jointly. However, because the Court has determined that Quality Industries is not liable for the damages Pinova alleges, the Court will refer to this motion as Quality Mill's motion for the remainder of the Order.

Ga. Code Ann. § 11-2-715(2). In applying subsection (a), Georgia Courts have held that a seller can reasonably foresee the consequences of a breach if its agents have visited the buyer's facilities, observed its operations, were aware of the specific production challenges the buyer faced, and designed and built equipment to alleviate those specific problems. See <u>Latex Equip. Sales & Serv., Inc. v. Apache Mills, Inc.</u>, 484 S.E.2d 274, 276 (Ga. Ct. App. 1997). As to matters of causation generally,

> While the question of proximate cause is usually submitted to the jury as a question of fact, it may be decided as a matter of law where the evidence shows clearly and palpably that the jury could reasonably draw but one conclusion, that the defendant's acts were not the proximate cause of the injury.

<u>Atlanta Gas Light Co. v. Gresham</u>, 394 S.E.2d 345, 347 (Ga. 1990) (quoting <u>Kells v. Northside Realty Assocs., Inc.</u>, 274 S.E.2d 66, 67 (Ga. Ct. App. 1980)).

Quality Mill primarily argues that summary judgment is appropriate because Pinova failed to provide evidence showing that a breach of the warranty caused its consequential damages. Quality Mill also attempts to argue that Pinova failed to cover its losses.

### i. Causation of Consequential Damages

Here, there is clearly a question of material fact as to whether or not the chains were defective at the time they were sold. In a letter to Quality Mill, Webster, the chain

12

manufacturer, admitted that "there were some obvious defects in workmanship on the chain. The incomplete welds are completely unacceptable by Webster standards." Dkt. no. 76-6, p. 11. In its own evaluation of the chains, Webster found that the "core hardness of the pins measures in the low 50s and is out of specification." Dkt. no. 76-7, p. 12. Because Webster's hardness specifications for the chain pins is 35-40, Id. at 14, a hardness beyond this range can make the material more brittle and probably contributed "to the fracture of the pins." Id. at 12. Webster's finding that the chains it manufactured exceeded its own hardness specifications was corroborated by Pinova's expert, who opined that a failed pin he examined "exhibited a hardness of 52 HRC which was significantly higher than the requirements of 35-40 HRC. This would suggest insufficient tempering temperatures" during the manufacturing process. Dkt. no. 64-4.

There is also a question of material fact as to whether or not the chains failed. Pinova's employees on the production floor testified that when the divinilator chain first failed, they inspected the chain and found that a sheared pin had come out of one of the link's barrels. Dkt. no. 87 (Carson Dep. Excerpt), 20:4-21. On another occasion, members of the ground crew saw the chain "separated completely on one side," and the

chain was "mangled up and bunched up," with some of the pins broken. Id. at 95:17-96:20.

Finally, there is also evidence that Quality Mill had reason to know, at the time of contracting, of Pinova's "general or particular requirements and needs," and how a breach could cause consequential damages in light of those needs. Brice, from Quality Mill, testified that Pinova had been buying products from Quality Mill for 12 years, and that he knew their needs and what types of products they used. Dkt. no. 76-5 (Brice Dep. Excerpts), 15:15-23. He also visited Pinova's facilities about every week, regardless of whether or not they were having any problems. Id. at 14:8-10.

Despite this evidence, though, Quality Mill insists that Pinova has no evidence that the chains' defects proximately caused the chains' failures. Furthermore, Quality Mill argues that its own expert concluded that the chains actually failed because of "operational, maintenance, and/or environmental factors," and that this expert evidence is unrebutted by Pinova's expert. Dkt. no. 64-1, pp. 8, 11 (citing ESI Expert Report, Dkt. no. 66). Quality Mill argues that it is thus entitled to summary judgment.

However, the "grant of summary judgment based in whole or in part on the opinion of an expert witness is not appropriate," except when it is the plaintiff's motion, the plaintiff must

rely on expert testimony to prevail at trial, or in certain professional negligence cases, "because the weight and credit to be given to the opinion evidence is not for the trial judge but for a jury to decide. McDonald v. Mazda Motors of Am., Inc., 603 S.E.2d 456, 461 (Ga. Ct. App. 2004). "Breach of implied warranty may be proven without expert testimony to show that a product is defective and that the defect existed from the time of manufacture. The presence or absence of breach of implied warranty from a defect does not mandate expert opinion to win at trial," and to grant summary judgment based on expert opinion would be an error. Id. Quality Mill's expert may have opined that the defective workmanship on the chains did not cause the chain failures; but this opinion—unrebutted or otherwise—will not support a grant of summary judgment on Defendants' behalf. That opinion merely creates a question of material fact as to causation.

Quality Mill asks the Court to remove the factual issue of causation from the jury's hands. But the evidence does not show "clearly and palpably that the jury could reasonably draw but one conclusion, that [Quality Mill's] acts were not the proximate cause" of the chains' failures. See Atlanta Gas Light Co., 394 S.E.2d at 347. A reasonable jury could possibly conclude, based on Pinova's evidence, that the chains failed

AO 72A
(Rev. 8/82)

because of their poor workmanship. The causation question, then, must be left to the jury.

Quality Mill also argues that Pinova has not proven the full extent of its damages by tracing each chain failure back to a particular purchase from Quality Mill. This question of proof is also best left to the jury.

### ii. Covering

Late in its summary judgment briefing, Quality Mill suggests that Pinova failed to show that it covered its losses (or had conceded the absence of such evidence), and thus is not entitled to consequential damages as a matter of law. See Dkt. no. 82, p. 2.

Georgia Code section 11-2-715(2)(a) allows buyers to recover consequential damages for "[a]ny loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise." Ga. Code Ann. § 11-2-715(2)(a). "Cover" typically refers to the buyer's efforts to find goods in substitution for those due from the seller. See Ga. Code Ann. § 11-2-712(1). A jury could find that expenses related to testing a defective product are incurred "in connection with effecting cover." Mitchell Family Dev. Co., Inc. v. Universal Textile Techs., LLC, 602 S.E.2d 878, 880-881 (Ga. Ct. App. 2004). Additionally, "the buyer who attempts to remedy

AO 72A
(Rev. 8/82)

a defect through repair as opposed to outright rejection and replacement should not be penalized by denying him the opportunity to recover his reasonable repair costs made in good faith." Poultry Health Serv. of Ga., Inc. v. Moxley, 538 F. Supp. 276, 279 (S.D. Ga. 1982).

Clearly, there is evidence on the record of Pinova's attempts to mitigate its losses. When the chains first began to break, it was in contact with Quality Mill and Webster seeking to find a solution to the problem. While the divinilators were out of commission for 14 days, Pinova purchased a substitute raw material to meet its sales demands and suffered a higher cost of goods sold. Despite these efforts, Pinova still had to purchase replacement goods from a different supplier and manufacturer. Thus, summary judgment is not appropriate on a theory that Pinova failed to cover its losses.

### b. Attorney's Fees

Quality Mill also moves for summary judgment as to Pinova's request for attorney's fees. Pursuant to Georgia Code section 13-6-11,

> The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them.

AO 72A
(Rev. 8/82)

"Questions of bad faith, stubborn litigiousness, and unnecessary trouble and expense are generally questions for the jury." Duncan v. Klein, 720 S.E.2d 341, 347 (Ga. Ct. App. 2011). Thus, it will be for a jury to decide whether Quality Mill acted in bad faith, was stubbornly litigious, or has caused Pinova unnecessary trouble or expense. Quality Mill's motion for summary judgment on Pinova's claim for attorney's fees is **DENIED**.

### c. Other Damages

Quality Mill moves for summary judgment on claims Pinova "may" assert for the costs of the chains at issue and the difference in value of the sections of chain it accepted and the value those sections would have had if they had been as warranted, pursuant to Georgia Code section 11-2-714(2). See Dkt. nos. 64-1, p. 11; 82, pp. 4-5. Plaintiff has not responded to this request. See Dkt. nos. 82, 76. Nor do these costs appear on Pinova's schedule calculating the total cost of the chain failure.[2] See Dkt. no. 87, p. 23. The Court will **GRANT** Quality Mill's unopposed motion for summary judgment on unasserted claims.

---

[2] While Quality Mill objects to any potential claim for the "costs of the chains at issue," it does not specifically object to the costs of replacement chains as included in Pinova's damages calculation. As such, the costs of replacement chains will not be excluded from Pinova's damages claim at this stage of the litigation.

## CONCLUSION

Pinova did not allege that Defendant Quality Industries is vicariously liable for Quality Mill's breach of contract by way of a veil-piercing theory, and the complaint does not otherwise support the application of that doctrine. Defendant Quality Industries' motion for summary judgment (Dkt. no. 43), then, must be **GRANTED**. Defendants' partial motion for summary judgment (Dkt. no. 64) is **GRANTED in part and DENIED in part**: summary judgment is **DENIED** as to Pinova's claim for consequential damages and attorney's fees; summary judgment is **GRANTED** as to Pinova's yet-to-be-claimed damages for the costs of the subject chains and the difference in value between what Quality Mill sold to Pinova and what was warranted. Pinova's claim for consequential damages and any other claims for which summary judgment was not sought will proceed to trial.

**SO ORDERED**, this 3RD day of September, 2015.

*/s/ Lisa Godbey Wood*

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA